

*Ocwen Loan Servicing, LLC*
*P.O. Box 24737*
*West Palm Beach, Florida 33416-4737*
*(Do not send correspondence or payments to the above address.)*    WWW.OCWEN.COM

## Helping Homeowners Is What We Do! ™

Friday, February 12, 2016

Julio C Gurrea
8322 Sw 44th Pl
Davie, FL 33328

**Your executed Home Affordable Modification Agreement!**

Re:   Loan Number: 7      3604
      Property Address: 8322 Sw 44th Pl | Davie, FL 33328

Dear Borrower(s):

We are glad to be able to assist all qualifying homeowners save their homes from foreclosure and thank you for sending in your completed Home Affordable Modification Agreement.

Included with this letter is an executed copy of your Home Affordable Modification Agreement to keep for your records.

If you have any questions regarding your Home Affordable Modification Agreement, please call our Customer Care Center at (800) 746-2936 Monday to Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm and Sunday 12:00 pm to 9:00 pm ET, and remember **"Helping Homeowners is what we do!"**

Sincerely,

Ocwen Loan Servicing, LLC

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*    NMLS# 1852

3604

1-814-27674-0000104-001-14-000-001-000-000
-BD-PRA

Investor Loan # _____  _____
After Recording Return To:

_____
_____
_____

_____
This document was prepared by _____
_____[Space Above This Line For Recording Data]_____

HOME AFFORDABLE MODIFICATION AGREEMENT

## (Step Two of Two-Step Documentation Process)

Borrower(s) ("I"): **Julio C Gurrea Coral Gurrea**

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): **10/31/2006**

Loan Number          **3604**

Property Address: **8322 Sw 44th Pl Davie, FL 33328** ("Property")
*[and Legal Description if recordation is necessary]*

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Servicer, the Servicer will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Servicer and agree:
    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B. I live in the Property as my principal residence, and the Property has not been condemned;
    C. There has been no change in the ownership of the Property since I signed the Loan Documents;
    D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
    E. Under penalty of perjury, all documents and information I have provided to Servicer in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
    F. If Servicer requires me to obtain credit counseling in connection with the Program, I will do so;
    G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan; and
    H. In cases where I received a discharge in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Servicer agrees, based on this representation, that I will not have personal liability on the debt pursuant to this Agreement.

BD-PRA_Tier1_v2.0
424058
*NMLS # 1852*

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. TIME IS OF THE ESSENCE under this Agreement;

    B. If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents; and

    C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 3/1/2016 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 3/1/2016.

    A. The new Maturity Date will be: 11/1/2046, at which time a final balloon payment in an amount equal to all remaining amounts owed under the Loan Documents will be due.

    B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $377,506.73 (the "New Principal Balance").

    C. $140,080.38 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $99,980.38 of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 12/1/2015, the Servicer shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $237,426.35. Interest at the rate of 2.00000% will begin to accrue on the Interest Bearing Principal Balance as of 2/1/2016 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 3/1/2016. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-Loans Maturity | 2.00000% | 2/1/2016 | $718.99 | $440.41, adjusts annually after year 1 | $1,159.40, adjusts annually after year 1 | 3/1/2016 | 369 |
| - | - | - | - | - | - | - | - |
| - | - | - | - | - | - | - | - |
| - | - | - | - | - | - | - | - |
| - | - | - | - | - | - | - | - |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step or simple interest rate.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.


D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full (1) the Deferred Principal Balance (deferred principal balance will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the deferred principal balance.), if any, and (2) any other amounts still owed under the Loan Documents, by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance (The new principal balance less the deferred principal balance shall be referred to as the "interest bearing principal balance), or (iii) the new Maturity Date.

G. If I make a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.



4. **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

   D. Funds for Escrow Items. I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

   Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount. Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D.

   Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Servicer can require under RESPA. Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I can agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

BD-PRA_Tier1_v2.0
424058
NMLS # 1852

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.



E. That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Servicer shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Servicer will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

J. If under the Servicer's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Servicer determines necessary.

K. That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void.

L. Corrections and Omissions. You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note. If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error. Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents.

M. Mortgage Electronic Registration Systems, Inc. "MERS" is a separate corporation existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026 Flint, MI 48501-2026, (888) 679-MERS. In cases where the Loan has been registered (solely as nominee for lender and lender's successors and assigns) with MERS and MERS is named as mortgagee in the Loan Documents, MERS, if necessary to comply with law or custom, has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Servicer including, but not limited to, releasing and canceling the mortgage loan.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

1-814-27674-0000104-001-18-000-001-000-000

3604                                                                                                        -BD-PRA

☐ If this box is checked, Borrower(s) signature must be notarized.

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here → _____          01 / 06 / 2016     Date
                Julio C Gurrea

State of Florida)
County of Broward         )
On   01/06/2016   before me, __at the UPS store__ personally appeared __Julio C. Gurrea__, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)
Print Name: Dawn Marie Pokorny

Commission expiration date 7 / 13 / 2019

Personally Known_____ OR Produced Identification ____✓____
Type of Identification Produced  FDL  G600-

**Dawn Marie Pokorny**
**NOTARY PUBLIC**
**STATE OF FLORIDA**
**Comm# FF899515**
**Expires 7/13/2019**

---

Sign Here → _____          01 / 06 / 2016     Date
                Coral Gurrea

State of Florida)
County of Broward         )
On   01/06/2016   before me, __at the UPS store__ personally appeared __Coral Gurrea__, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)
Print Name: Dawn Marie Pokorny

Commission expiration date 7 / 13 / 2019

Personally Known_____ OR Produced Identification ____✓____
Type of Identification Produced  FDL  G600-

**Dawn Marie Pokorny**
**NOTARY PUBLIC**
**STATE OF FLORIDA**
**Comm# FF899515**
**Expires 7/13/2019**

BD-PRA_Tier1_v2.0
424058
NMLS # 1852

.3604

1-814-27674-0000104-001-19-000-001-000-000

-BD-PRA

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave page 6 blank and return it with the rest of the agreement.

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here→ _[signature]_  01/06/2016 Date

State of Florida)
County of Broward )

On 01/06/2016 before me, at the UPS Store personally appeared Julio C. Gurrea, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _[signature]_ (Seal)

Print Name: Dawn Marie Pokorny

Commission expiration date 7/13/2019

Personally Known_____ OR Produced Identification ✓

Type of Identification Produced FL DL G600-L

[Notary seal: Dawn Marie Pokorny, NOTARY PUBLIC, STATE OF FLORIDA, Comm# FF899515, Expires 7/13/2019]

---

Sign Here→ _[signature]_  01/06/2016 Date

State of Florida)
County of Broward )

On 01/06/2019 before me, at the UPS Store personally appeared Coral Gurrea, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _[signature]_ (Seal)

Print Name: Dawn Marie Pokorny

Commission expiration date 7/13/2019

Personally Known_____ OR Produced Identification ✓

Type of Identification Produced FL DL G600-1

[Notary seal: Dawn Marie Pokorny, NOTARY PUBLIC, STATE OF FLORIDA, Comm# FF899515, Expires 7/13/2019]

Servicer FEB 1 2 2016

Date
If applicable: _____

Mortgage Electronic Registration Systems, Inc. – Nominee for Servicer

BY _[signature]_ Joseph Monaco

Joseph Monaco
Authorized Officer

:3604                                                                                                          -BD-PRA

## BALLOON PAYMENT DISCLOSURE

Borrower(s) ("I"): Julio C Gurrea Coral Gurrea

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 10/31/2006

Loan Number         3604

Property Address: 8322 Sw 44th Pl Davie, FL 33328



THIS BALLOON PAYMENT DISCLOSURE is made this 23 day of December, 2015, and is incorporated into and shall be deemed to supplement the Loan Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a balloon payment provision representing the amount of the Deferred Principal Balance under the Agreement. The Agreement also contains a principal reduction feature that may reduce the Deferred Principal Balance in three equal installments of $33,326.79 in accordance with Section 3(C) of the Agreement, provided that the Borrower remains eligible for principal reduction for the time period specified in Section 3(C) of the Agreement.

A balloon payment is a scheduled lump sum usually due at the end of the mortgage loan term that is significantly larger than the other regularly scheduled periodic payments. This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. The amount of the balloon payment may vary depending on my payment history. If my loan is an adjustable rate mortgage, the amount of the balloon payment also may vary based on any interest rate changes that occur during the life of the loan.

If the Borrower remains eligible for the time period specified in the following table, the Deferred Principal Balance will be adjusted to the amounts reflected in the table.

| Duration of Eligibility | Deferred Principal Balance due on Maturity |
|---|---|
| 3/1/2016 up to 12/1/2016 | $212,885.55 - NO ADJUSTMENT |
| 12/1/2016 up to 12/1/2017 | $179,558.76 |
| 12/1/2017 up to 12/1/2018 | $146,231.97 |
| 12/1/2018 up to 11/1/2046 | $112,905.17 |

THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: AN INSTALLMENT OF $112,905.17 WILL BE DUE AND PAYABLE IN FULL ON 11/1/2046, PROVIDED THAT ALL PAYMENTS ARE MADE IN ACCORDANCE WITH THE LOAN TERMS AND THE INTEREST RATE DOES NOT CHANGE FOR THE ENTIRE LOAN TERM. The balloon payment on the loan modification I have applied for is due 369 months from the effective date of the modification.

*Notice required by North Dakota law:*

CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN MODIFICATION THAT YOU OBTAIN AT THIS TIME.

If I cannot pay the balloon payment when due, I may have to obtain a new loan to make the balloon payment or I may lose my property through foreclosure. Before deciding to take this loan, I will consider my ability to pay the balloon payment when it comes due. In addition, the value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

*BD-PRA_Tier1_v2.0*
*424058*
*NMLS # 1852*

-53604

1-814-27674-0000104-001-21-000-001-000-000

-BD-PRA

NEITHER OCWEN LOAN SERVICING, LLC NOR ANY LENDER TO WHICH THIS LOAN IS TRANSFERRED IS UNDER ANY OBLIGATION TO FINANCE THE AMOUNT OF THE BALLOON PAYMENT. THEREFORE, I MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS I OWN OR I MAY HAVE TO FIND ANOTHER LENDER TO REFINANCE THE LOAN.

ASSUMING THE OWNER OF MY LOAN OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, I WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. I MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.



I/we have read the above disclosure and acknowledge receiving a copy by signing below.

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below.

_____ ←SIGN    01/06/2016
Borrower                    Date

_____ ←SIGN    01/06/2016
Borrower                    Date

BD-PRA_Tier1_v2.0
424058
NMLS # 1852